**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

NAUTILUS INSURANCE COMPANY, )
)
    Plaintiff, )
)  Case No.
v. )
)
JLL CONSTRUCTION SERVICES, INC., )
JERRY L. LEWIS, 231 W. SCOTT, LLC, )
DAVID E. RANSBURG, and MARK )
RANSBURG, )
)
    Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

   Now comes Plaintiff, Nautilus Insurance Company, by and through its attorneys, Dana A Rice and Abigail M. Higgins of Hinshaw & Culbertson LLP, and for its Complaint for Declaratory Judgment against Defendants, JLL Construction Services, Inc., Jerry L. Lewis, 231 W. Scott, LLC, David E. Ransburg, and Mark Ransburg (collectively the "Defendants"), it states as follows:

### THE PARTIES

   1.  Nautilus Insurance Company ("Nautilus") is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Illinois.

   2.  At all times relevant hereto, JLL Construction Services, Inc. ("JLL") was a corporation organized under the laws of Illinois within its principal place of business located in Cook County, Illinois.

   3.  Upon information and belief, Jerry L. Lewis ("Lewis") is a citizen of Illinois.

4.      At all times relevant hereto, 231 W. Scott, LLC was an Illinois limited liability company, with its principal place of business located in Cook County, Illinois.  Upon information and belief, none of the members of 231 W. Scott, LLC is an Arizona citizen.

5.      Upon information and belief, David E. Ransburg is an Illinois citizen.

6.      Upon information and belief, Mark Ransburg is an Illinois citizen.

## JURISDICTION

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the plaintiff and the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

8.      Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district and because all of the defendants are residents of this judicial district.

## THE UNDERLYING LAWSUIT

9.      On or about June 13, 2011, David E. Ransburg, Mark Ransburg, and 231 W. Scott, LLC (hereinafter referred to collectively as the "Ransburgs") filed a lawsuit in the Circuit Court of Cook County, Illinois, under case number 2011 L 006136 ("*Ransburg* Lawsuit").

10.      On or about March 24, 2015, the Ransburgs filed a Second Amended Complaint in the *Ransburg* Lawsuit ("*Ransburg* SAC") against Lakeside Bank, JLL, Lewis, Crystal Caison, Mayer Jeffers Gillespie, and Greater Illinois Title Company (collectively, "underlying defendants").  The *Ransburg* SAC is the current and operative pleading in the *Ransburg* Lawsuit, and was the pleading tendered to Nautilus on September 2, 2015. (A copy of the *Ransburg* SAC is attached hereto as **Exhibit A** and incorporated herein by reference).

2

11.     According to the *Ransburg* SAC, the Ransburgs decided that, following needed renovations to the three-story walk-up building at 231 West Scott Street in Chicago (the "Property"), Mark Ransburg would move into the Property and maintain it as his principal residence, while the family would sell or rent the remaining two units. (Ex. A, ¶¶19-20).

12.     The *Ransburg* SAC alleges that by 2006, all of the tenants had moved out, and the family decided it was time to renovate the Property. (*Id*., ¶21). The *Ransburg* SAC further alleges that the Ransburgs sought out advice and counsel from a family friend, Crystal Caison, an attorney then of-counsel with Lieggi Law Offices, LLC ("Lieggi firm"). (*Id*., ¶23).

13.     The *Ransburg* SAC alleges that in or about August, 2005, Caison, Paul Lieggi, and the Ransburgs had a meeting to discuss hiring Caison and the firm to manage the project. During the meeting, Caison allegedly described her credentials as a real estate attorney, and volunteered that she had a contractor in mind for the project – JLL and Lewis. (*Id.*, ¶27).

14.     The *Ransburg* SAC alleges that on or about August 24, 2005, the Ransburgs signed an engagement letter with the Lieggi firm, and Caison allegedly assisted the Ransburgs in the formation of the LLC, "231 W. Scott, LLC," which was incorporated on or about September 22, 2005, but involuntarily dissolved March 12, 2010, after Caison allegedly failed to file the annual report. (*id*., ¶¶31, 33).

15.     The *Ransburg* SAC alleges that Caison told the Ransburgs that her role in the project would be to protect their legal and financial interests in the project and the Property. (*Id*., ¶36).

16.     The *Ransburg* SAC alleges that before they hired the Lieggi firm, the Ransburgs identified a general contractor for the project, Telion, and had already approved a construction

3

loan from BankFinancial. The *Ransburg* SAC states that "Caison set out to dissolve the Ransburgs' relationships with these entities and to steer them to others." (*Id.*, ¶¶38-39).

17.     The *Ransburg* SAC alleges that Caison strongly advised the brothers to seek their construction loan from Lakeside Bank, and in early 2006, Paul Lieggi introduced and encouraged the Ransburgs to hire Lewis, who owned JLL, as the general contractor for the project. (*Id.*, ¶¶41-42).

18.     The *Ransburg* SAC alleges that Caison misrepresented Lewis' credentials, and claimed that Lewis regularly developed residential buildings across Chicago and that his specialty was renovating residential properties. The *Ransburg* SAC alleges that these statements were untrue or a gross exaggeration, and that JLL had not been involved in a single residential construction or renovation project prior to January 2006. (*Id.*, ¶¶43-44).

19.     The *Ransburg* SAC alleges that the Ransburgs signed an agreement with JLL on or about June 5, 2006. (*Id.*, ¶46). The *Ransburg* SAC alleges that at no time before Ransburgs hired Caison did she disclose that Lewis and/or JLL, as well as Lakeside Bank, had been clients of her firm. It alleges that in December, 2008, after it was too late to salvage the damage JLL had done to the Property, Caison confessed that Lewis was not a friend, but that he had been a client. (*Id.*, ¶¶49-50).

20.     The *Ransburg* SAC alleges that "[a]s a result of their transaction with [the underlying] defendants, plaintiffs, in the span of just one year, went from owning – free and clear and with 110% equity – a $1.2 million family heirloom property in Chicago's Old Town neighborhood to being on the brink of losing that [P]roperty in foreclosure."[1] (*Id.*, ¶14).

---

[1] The *Ransburg* SAC alleges that Lakeside Bank filed a foreclosure action against plaintiff in 2009, *Lakeside Bank v. 231 W. Scott, LLC, et al.*, 2009 CH 17899 (Cir. Ct. Cook Cty., Ill.).

131188255v1 0978108

21. The *Ransburg* SAC alleges that "JLL and Lewis were paid 100% of the contract price for the renovation work that was supposed to have been inspected and certified by Lakeside and its agents before any payments were released" and "Lakeside had already paid JLL and Lewis in full when the project was less than 50% complete and when the work done was obviously defective, of inferior quality and would have to be re-done." (*Id.*, ¶15).

22. The *Ransburg* SAC states that "[o]ver $130,000 in loan proceeds are simply missing and unaccounted for by Lakeside, which alone had responsibility and control over the loan proceeds by means of the construction escrow account it set up." (*Id.*, ¶16).

23. The *Ransburg* SAC alleges that "[s]ince early 2008, when JLL and Lewis walked off the job, the [P]roperty sat unfinished, vacant, uninhabitable and totally unsellable. It is also a blot on defendants' family pride and memory and an eyesore in an upscale Chicago neighborhood." (*Id.*, ¶17).

24. The *Ransburg* SAC states that "despite plaintiffs' sustained requests for information and documentation, Lakeside and Caison have refused to provide the evidence that would shed light on what transpired." (*Id.*, ¶18).

25. The *Ransburg* SAC alleges that "[d]espite Caison's representations to plaintiffs concerning Lewis/JLL's qualifications, it soon became apparent from Lewis/JLL's work on the [P]roperty that Lewis actually knew very little about how to renovate or build." (*Id.*, ¶98).

26. The *Ransburg* SAC alleges that basic components and construction were simply done the wrong way, and defective and poor quality work done at the Property includes the following deficiencies: improper installation of the framing, HVAC system, wood flooring, and windows. The *Ransburg* SAC alleges that the wood floors buckled on all three levels, and the windows were too small and not those selected by the Ransburgs. (*Id.*, ¶¶99-103).

5

27.     The *Ransburg* SAC alleges that the construction was done out of sequence and was simply not completed. (*Id*., ¶¶104-105). The *Ransburg* SAC alleges that work that was supposed to have been done pursuant to the contract but was not includes: missing and unfinished walls, missing drywall and plaster, gaps at the top/bottom of walls, incomplete additions on the rear of the house, missing exterior walls and insulation, missing new electrical system, switches and outlets, incomplete installation of wood flooring, incomplete and defective plumbing system, causing leaks, unfinished bathrooms, missing sinks, toilets, and tubs, missing new roof causing extensive leaks in the existing roof, incomplete exterior masonry work, and missing stairways, fixtures, doors and door handles. (*Id.*, ¶¶105-112, 114).

28.     The *Ransburg* SAC further alleges that Lewis and JLL created openings on the second and third floors of the building during demolition and never repaired them, resulting in pigeons building nests at the Property. (*Id*., ¶113).

29.     The *Ransburg* SAC further alleges that a $9,000 security system that was contracted for was never installed, and that only $22,000 out of the $40,000 the Ransburgs paid for cabinetry was paid to the cabinetmaker. The SAC alleges that the remaining $18,000 was never paid and remains unaccounted for. As a result, the SAC alleges that JLL incurred over $25,000 in storage fees with the cabinetmaker. (*Id*., ¶116).

30.     The *Ransburg* SAC alleges that many appliances that the Ransburgs paid for were never installed, and many of the materials that JLL used were not the ones the Ransburgs selected, and instead were cheaper or of inferior quality. (*Id.*, ¶¶117-118).

31.     The *Ransburg* SAC states that "the only work that Lewis/JLL did do clearly and completely was the demolition work and the installation of cement flooring in the basement." (Id., ¶119). The *Ransburg* SAC alleges that the building was gutted, basement dug out, a radiant

6

(i.e., heat-generating) flooring was installed in the basement, an incomplete porch was added, furnaces were installed, and electric fireplaces were added. The *Ransburg* SAC alleges that it is unclear whether the radiant flooring and electric fireplaces ever worked because there has never been a working electrical system to test it. (*Id.*).

32.     The *Ransburg* SAC further alleges it is unknown whether the completed work was done according to building code because there has never been a City inspection. (*Id.*, ¶120).

33.     The *Ransburg* SAC alleges that "[a]s a consequence of JLL's pervasively defective and incomplete work, 231 W. Scott is at present utterly uninhabitable, inoperable, unmarketable, and an eyesore in a beautiful neighborhood that requires major work." (*Id.*, ¶121).

34.     The *Ransburg* SAC alleges that the Ransburgs will retain an expert to thoroughly inspect the building, identify and assess the construction flaws and deficiencies, and provide estimates of the cost of repair and completion.

35.     The *Ransburg* SAC further alleges that the residential renovation project was a small one for JLL and Lewis, and that "[i]ts commercial projects were more profitable and, consequently, were its first business priority." (*Id.*, ¶122).

36.     The *Ransburg* SAC states that "[o]n information and belief, Lewis/JLL were co-mingling funds from other projects and using money from the Ransburgs' project to pay their subcontractors on one or more other Lewis/JLL construction projects being done concurrently. Consequently, JLL shorted the 231 W. Scott project." (*Id.*, ¶123). The *Ransburg* SAC alleges "[a]s just one indication of this, Lewis/JLL did not pay its subcontractors at 231 W. Scott, several of whom later put liens on the [P]roperty" and "[p]laintiffs received such information repeatedly." (Id., ¶124).

131188255v1 0978108

37.     The *Ransburg* SAC alleges that between late April and August, 2008, little to no construction work was done on the Property because Lewis claimed he was not getting paid. (*Id.*, ¶125).

38.     The *Ransburg* SAC alleges that "[i]n or about October, 2008, Lewis told David Ransburg that construction would be completed in three months" and in December, 2008, "JLL received the 10th and final payout from Lakeside Bank," which Caison allegedly authorized, as she had done on each of the previous nine payouts. (*Id.*, ¶¶137-138).

39.     The *Ransburg* SAC alleges that in or about January or February, a representative of Lakeside Bank, told the Ransburgs that there was not enough money left in the construction fund to complete the project at the Property. The *Ransburg* SAC alleges that when the Ransburgs asked where the rest of the funds went, a representative at Lakeside Bank answered, "I don't know. We know there is fraud involved. We know there is money missing." The representative at Lakeside Bank told the Ransburgs that if he were in their positions, "he wouldn't let Lewis back in the [P]roperty," that they should change the locks, and that they should have Lewis arrested. (*Id.*, ¶¶140-142).

40.     The *Ransburg* SAC alleges that in January, 2009, JLL and Lewis ceased all construction at the Property, and in April, 2009, Lewis walked off of the job. (*Id.*, ¶143).

41.     The *Ransburg* SAC alleges that JLL and Lewis left extensive debris at the Property, resulting in city fines; they left windows open and the furnace on full blast, resulting in the Ransburgs incurring a $8,000 gas bill; and they left the building unlocked, open, and unsecured, resulting in stolen plumbing and copper. (*Id.*)

42.     The *Ransburg* SAC alleges that "much of JLL's work is defective and must be re-done." (*Id.*, ¶151).

8

43.     The *Ransburg* SAC alleges that the incomplete condition in which JLL and Lewis left the Property in 2009 has caused additional problems. For instance, the *Ransburg* SAC states that "although Lewis/JLL did install flooring in the basement, it did not replace the building's gutter system. As a result, after a heavy rain in 2009, the gutter system washed the [P]roperty's foundation, burst the back basement wall, flooding the basement and depositing water and mud throughout the length of the basement." (*Id*., ¶151). As a result, the *Ransburg* SAC alleges that even if the radiant flooring ever worked, it likely no longer works, and that there is now extensive mold growing on the basement floors. The *Ransburg* SAC also alleges that water leaks in the roof also caused damaged drywall that was erected. (*Id.*).

44.     The *Ransburg* SAC states that "[s]ince Lewis/JLL walked off of the job, plaintiffs have had four different contractors inspect the building and give an opinion as to the cost of repairing and reversing the defective work and completing the project. Estimates have ranged from $475,000 to $525,000. But these estimates did not take into account the buckled flooring or effects of the basement flooding, which occurred subsequently." (*Id*., ¶152).

45.     The *Ransburg* SAC alleges that when JLL and Lewis ceased all work, construction was approximately only 20-30% complete, and that no further work has been done on the Property by JLL, Lewis, or anyone else since April, 2009. (*Id*., ¶144).

46.     The *Ransburg* SAC alleges that as a direct result of the underlying defendants' conduct, "Mark and David Ransburg and their mother have suffered severe and emotional and physical distress." (*Id*., ¶155).

47.     The *Ransburg* SAC states "[f]or instance, during the second half of 2008, Mark Ransburg was hospitalized repeatedly – as frequently as twice per month - for flare-ups of Crohn's disease. Symptoms included severe dehydration and vomiting. The symptoms of Crohn's

9

131188255v1 0978108

are exacerbated by mental and emotional distress. In January, 2009, Mark underwent surgery for Crohn's. In addition, Mark experienced, for the first time in his life, heart palpitations and twice had to have his heart shocked back to normal rhythm." (*Id*., ¶156).

48.     The *Ransburg* SAC alleges that "in or about the second half of 2008, David Ransburg was hospitalized two or three times for an undiagnosed abdominal disorder that caused him to pass out. He was put on prescription medications and received outpatient treatment to manage his symptoms and stress." (*Id*., ¶158).

49.     The *Ransburg* SAC alleges that "Mrs. Ransburg ... suffered from anxiety disorder, high blood pressure and a heart condition for which she is under frequent doctor's care. In or about 2008, Lewis/JLL filed a lien against the Scott [P]roperty in Mrs. Ransburg's name. This event, coupled with her ongoing knowledge of what had happened to the project and the [P]roperty, caused her severe distress that exacerbated his physical conditions." (*Id*., ¶160).

50.     The *Ransburg* SAC alleges the following counts against JLL and Lewis: breach of contract, violation of the Illinois Consumer Fraud Act, common law fraud, violation of the Home Repair and Remodeling Act, violation of the Home Repair Fraud Act,[2] and Joint Venture.  The *Ransburg* SAC seeks actual and punitive damages, equitable relief, attorney's fees, and costs.

## THE NAUTILUS POLICY

51.     Nautilus issued a commercial general liability insurance policy to JLL Construction Services, Inc. under policy No. NC557902 for the period of May 8, 2006 to May 8,

---

[2] The *Ransburg* SAC contains footnotes after the counts for breach of contract, violation of the Illinois Consumer Fraud Act, common law fraud, violation of the Home Repair and Remodeling Act, and violation of the Home Repair Fraud Act alleged against JLL and Lewis providing that "[t]he Court previously dismissed this count without prejudice as to Lewis. Plaintiffs reserve their right to re-plead it as to Lewis in the event that their pending discovery requests show a good-faith basis for the claim."

131188255v1 0978108

2007 ("Policy"). (A copy of the Policy is attached hereto as **Exhibit B** and incorporated herein by reference).

## COUNT I

## NO "PROPERTY DAMAGE"

52.     Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 52 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

53.     The Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
* * *

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

            * * *

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

11

* * *

(*See* Ex. B).

54.     The Nautilus Policy defines the term "property damage" as follows:

**SECTION V – DEFINITIONS**

* * *

**17.**     "Property Damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

(*See* Ex. B)

55.     The *Ransburg* SAC alleges that JLL and Lewis failed to renovate and build the Property in a good and workmanlike manner because the Property contains numerous design and construction defects.

56.     The *Ransburg* SAC seeks damages from JLL and Lewis to repair and/or replace their allegedly defective work.

57.     The Policy does not provide coverage for the *Ransburg* SAC because it does not allege "property damage" as that term is defined in the Policy.

58.     Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

59.     An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to

12

declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b.    Find and declare that the *Ransburg* SAC does not allege "property damage" as defined under the Policy;

    c.    Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

    d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## NO "OCCURRENCE"

60.    Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 60 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

61.    The Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
\* \* \*

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

13

131188255v1 0978108

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

\* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

(*See* Ex. B)

62. The Nautilus Policy defines the term "occurrence" as follows:

**SECTION V – DEFINITIONS**

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

(*See* Ex. B)

63. The *Ransburg* SAC alleges that JLL and Lewis failed to renovate and build the Property in a good and workmanlike manner because the Property contains numerous design and construction defects.

64. The *Ransburg* SAC seeks damages from JLL and Lewis to repair and/or replace their allegedly defective work.

65. The Policy does not provide coverage for the *Ransburg* SAC because it does not allege "property damage" caused by an "occurrence" as those terms are defined in the Policy.

131188255v1 0978108

66.     Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

67.     An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the *Ransburg* SAC does not allege "property damage" caused by an "occurrence" as defined under the Policy;

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO "BODILY INJURY" OR "PROPERTY DAMAGE" DURING THE POLICY

68.     Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 68 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

69.     The Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
* * *

15

131188255v1 0978108

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

         * * *

   b. This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

         * * *

(*See* Ex. B)

70. Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence," which Nautilus expressly denies that it does, the "bodily injury" or "property damage" must occur during the policy period in order to trigger coverage under the Nautilus Policy.

71. The Nautilus Policy does not provide coverage for the *Ransburg* SAC because it does not allege "bodily injury" or "property damage" that took place during the policy period.

72. Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

16

73.     An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the *Ransburg* SAC does not allege "bodily injury" or "property damage" that took place during the Policy;

c.     Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE POLICY'S "BUSINESS RISK" EXCLUSIONS BAR COVERAGE

74.     Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 74 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

75.     The Nautilus Policy contains the following exclusions commonly referred to as the "Business Risk" Exclusions:

**2.     Exclusions**

This insurance does not apply to:

* * *

**j.     Damage To Property**

"Property damage" to:

* * *

17

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

* * *

**k.     Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor.

**m.     Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A "defect, deficiency, inadequacy or dangerous condition" in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

18

(*See* Ex. B)

76.    The Policy defines the terms "impaired property," "products-completed operations hazard," "your product" and "your work" as follows:

**SECTION V – DEFINITIONS**

* * *

**8.**    "Impaired Property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

* * *

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" or "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**    When all of the work called for in your contract has been completed.

            **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**    When that part of the work done at a job site has been put to its intended use by any person or

organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

21.   "Your product":

   **a.**   Means:

      **(1)**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)**   You;

         **(b)**   Others trading under your name; or

         **(c)**   A person or organization whose business or assets you have acquired; and

      **(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.**   Includes

      **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)**   The providing of or failure to provide warnings or instructions.

   **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

22.   "Your work":

   **a.**   Means:

      **(1)**   Work or operations performed by you or on your behalf; and

      **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

131188255v1 0978108

  **b.**  Includes

    **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)**  The providing of or failure to provide warnings or instructions."

        * * *

(*See* Ex. B)

77. The *Ransburg* SAC alleges that JLL and Lewis failed to build the Property in a good and workmanlike manner because the Property contains numerous design and construction defects.

78. The *Ransburg* SAC seeks damages from JLL and Lewis to repair and/or replace their allegedly defective work.

79. Even if the *Ransburg* SAC alleged "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, one or more of the foregoing "business risk" exclusions bars coverage for the damages alleged in the *Ransburg* SAC.

80. Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit.

81. An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

131188255v1 0978108

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.    Find and declare that the "business risk" exclusions bar all coverage under the Policy for the claims asserted in the *Ransburg* SAC;

c.    Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## THE "EXPECTED OR INTENDED INJURY" EXCLUSION BARS COVERAGE

82.    Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 81 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

83.    The Nautilus Policy contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

(*See* Ex. B) (hereinafter the "Expected or Intended Injury Exclusion").

84.    The *Ransburg* SAC alleges that when the Ransburgs asked where the rest of the funds went, a representative at Lakeside Bank answered, "I don't know. We know there is fraud involved. We know there is money missing." The representative at Lakeside Bank told the

22

Ransburgs that if he were in their positions, "he wouldn't let Lewis back in the property," that they should change the locks, and that they should have Lewis arrested. (*Id.*, ¶¶140-142).

85.     The *Ransburg* SAC states that "[o]n information and belief, Lewis/JLL were co-mingling funds from other projects and using money from plaintiffs' project to pay their subcontractors on one or more other Lewis/JLL construction projects being done concurrently. Consequently, JLL shorted the 231 W. Scott project." (*Id.*, ¶123).

86.     Count XXII of the *Ransburg* SAC alleges that Lieggi, Caison, Lakeside, and JLL "undertook, in a one-time grouping or joint venture, to defraud plaintiffs through the acts and omissions alleged above." (*See* Ex. A, ¶361).

87.     Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Policy does not provide coverage for any damage arising out any "bodily injury" or "property damage" expected or intended by JLL or Lewis.

88.     Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit.

89.     An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

23

b.   Find and declare that the Expected or Intended Injury exclusion bars coverage under the Policy to the extent the damage alleged in the *Ransburg* SAC was expected or intended by JLL and Lewis;

c.   Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.   Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VI

## LATE NOTICE

90.   Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 90 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

91.   The Policy contains the following notice requirements:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
* * *

**2.   Duties In The Event Of Occurrence, Offense, Claim or Suit**

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.   If a claim is made or "suit" is brought against any insured, you must:

24

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

\* \* \*

(*See* Ex. B)

92. The *Ransburg* SAC alleges that the events that gave rise to the *Ransburg* Lawsuit occurred between 2006 and 2009.

93. The *Ransburg* Lawsuit was originally filed on June 13, 2011, naming JLL and Lewis as defendants.

94. Nautilus first received notice of the Ransburgs' claim and the *Ransburg* Lawsuit on September 2, 2015, approximately six (6) years after the last events giving rise to the Ransburgs' claim allegedly occurred, and over four (4) years after JLL and Lewis were named as defendants in the *Ransburg* Lawsuit.

95. Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Policy does not provide coverage for the Ransburgs' claim or the *Ransburg* Lawsuit because JLL and Lewis failed to comply with the notice requirements in the Nautilus Policy.

96. Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit.

97. An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to

131188255v1 0978108

declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b. Find and declare that JLL and Lewis breached the notice requirements under the Policy;

c. Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VII

## JLL AND LEWIS ARE NOT INSUREDS WITH RESPECT TO THE CONDUCT OF ANY JOINT VENTURE

98. Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 98 of Count VII of its Complaint for Declaratory Judgment as if fully set forth herein.

99. The Nautilus Policy provides, in relevant part, the following with respect to who is an insured therein:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

* * *

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

26

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

* * *

100. Count XXII of the *Ransburg* SAC alleges that Lieggi, Caison, Lakeside, and JLL "undertook, in a one-time grouping or joint venture, to defraud plaintiffs through the acts and omissions alleged above." (*See* Ex. A, ¶361).

101. Count XXII of the *Ransburg* SAC alleges that "[a]t all relevant times, the parties had an intent to carry on this enterprise for profit. All are for-profit entities. Through the various agreements they entered into with plaintiffs and each other, the parties each manifested an intent to be associated as joint venturers." (*Id.*, ¶365). It alleges that the, "[p]laintiffs had very little control over what occurred; for instance, they could not refuse payouts to JLL. The joint venturers represented to plaintiffs that they would ensure that the work was properly completed." (*Id.*, ¶367).

102. Count XXII of the *Ransburg* SAC alleges that "[t]he parties shared in the profits of the enterprise or planned to share in the profits. Each joint venturer made or expected to make substantial sums of money from the project." (*Id.*, ¶368). It further alleges that "[p]laintiffs have been severely damaged by defendants' joint venture, as detailed above." (*Id.*, ¶369).

103. The Nautilus Policy states "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, *joint venture* or limited liability company that is not shown as a Named Insured in the Declarations." (*See* Ex. B) (emphasis added).

104. JLL and Lewis are not insureds under the Policy with respect to the conduct of any current or past joint venture with the underlying defendants as alleged in the *Ransburg* SAC.

27

105. Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

106. An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b.    Find and declare that JLL and Lewis are not insureds under the Policy with respect to the conduct of any current or past joint venture with the underlying defendants as alleged in the *Ransburg* SAC;

    c.    Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

    d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VIII

### THE "OPEN ROOF" EXCLUSION BARS COVERAGE

107. Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 107 of Count VIII of its Complaint for Declaratory Judgment as if fully set forth herein.

108. The Nautilus Policy contains the following exclusion:

**CONDITIONAL EXCLUSION – ROOFING OPERATIONS – WEATHER RELATED PROPERTY DAMAGE**

* * *

28

This insurance does not apply to "property damage" for roofing operations conducted by you or on your behalf unless the following conditions are met:

**(1)** You have taken "appropriate" steps to determine any approaching adverse weather; and

**(2)** You have taken "appropriate" steps to provide a temporary coverage for an "open roof", which is able to withstand the normal elements; and

**(3)** The temporary cover must be put in place if the roof is to be left unattended for more than four consecutive hours.

\* \* \*

**"Appropriate"** means conduct or action customarily taken or used by contractors in the same field to protect or prevent damage under similar circumstances.

**"Open roof"** means any roof or section where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving exposed the underlying materials, structure shell or structure interior.

\* \* \*

(*See* Ex. B) (hereinafter referred to as the "Open Roof Exclusion").

109. The *Ransburg* SAC alleges that "[t]here were funds in the construction budget for a complete replacement of the roof, but Lewis/JLL did not install a new roof, and the extensive leaks in the existing roof were not repaired." (*Id.*, ¶111).

110. The *Ransburg* SAC further alleges that Lewis and JLL created openings on the second and third floors during demolition and never repaired them, resulting in pigeons building nests at the Property. (*Id.*, ¶113).

111. Even if the *Ransburg* SAC alleged "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Open Roof Exclusion bars coverage for any damage arising out the failure by JLL or Lewis to take appropriate steps to provide a temporary coverage for an "open roof" as defined under the Policy.

29

112.     Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

113.     An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the Open Roof Exclusion bars coverage under the Policy to the extent the damage alleged in the *Ransburg* SAC arose out of the failure of JLL and Lewis to take appropriate steps to provide a temporary coverage for an "open roof";

c.     Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IX

## THE MOLD EXCLUSION BARS COVERAGE

114.     Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 114 of Count IX of its Complaint for Declaratory Judgment as if fully set forth herein.

115.     The Nautilus Policy contains the following exclusion:

**EXCLUSION – MICROORGANISMS, BIOLOGICAL
ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS**

The following exclusion is **added** to EXCLUSIONS:

>    This insurance does not apply to:

>    1.      Liability, injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" arising out of, related to, caused by or in any way connected with the exposure to, presence or, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

>                                        * * *

(*See* Ex. B) (hereinafter referred to as the "Mold Exclusion")

116.    The *Ransburg* SAC alleges that JLL and Lewis failed to build the Property in a good and workmanlike manner because the Property contains numerous design and construction defects, which have caused, and are continuing to cause, water intrusion and damage to the Property.

117.    The *Ransburg* SAC further alleges that JLL and Lewis did not replace the gutter system causing damage after a heavy rain in 2009 including, the gutter system washed the Property's foundation, burst the back basement wall, and flooded the basement, depositing water and mud throughout the length of the basement. As a result, the *Ransburg* SAC alleges that there is now extensive mold on all of the flooring in the basement. The *Ransburg* SAC also alleges that water leaks in the roof also caused damaged drywall that was erected. (Ex. A, ¶151).

118.    The *Ransburg* SAC seeks damages from JLL and Lewis to repair and/or replace their allegedly defective work.

119.    Even if the *Ransburg* SAC alleged "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Mold

Exclusion bars coverage under the Policy for any of the damages related to rot, mold, mildew, and other health hazards as alleged in the *Ransburg* SAC.

120.    Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

121.    An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.    Find and declare that the Mold Exclusion bars coverage under the Policy for any damage related to rot, mold, mildew, and other health hazards as alleged in the *Ransburg* SAC;

c.    Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT X

## THE "PUNITIVE DAMAGES" EXCLUSION BARS COVERAGE

122.    Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 122 of Count X of its Complaint for Declaratory Judgment as if fully set forth herein.

123.    The Nautilus Policy contains the following exclusion:

131188255v1 0978108

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**

The following is **added** to EXCLUSIONS:

> This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.
> * * *

(*See* Ex. B) (hereinafter referred to as the "Punitive Damages Exclusion").

124. The *Ransburg* SAC seeks an award of punitive damages against JLL and Lewis for their alleged misconduct.

125. Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Punitive Damages Exclusion bars coverage under the Policy for any punitive or exemplary damages awarded in the *Ransburg* SAC.

126. Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

127. An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

33

b.      Find and declare that the Punitive Damages Exclusion bars coverage under the Policy for any punitive or exemplary damages awarded in the *Ransburg* SAC;

c.      Find and declare that Nautilus has and had no duty under the Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT XI

### THE DEMOLITION EXCLUSION BARS COVERAGE

128.    Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 128 of Count XI of its Complaint for Declaratory Judgment as if fully set forth herein.

129.    The Nautilus Policy contains the following exclusion:

**DEMOLITION AND BUILDING WRECKING CONDITIONAL EXCLUSION**
* * *

The following exclusion is added to Paragraph **2. Exclusions** under **SECTION I – COVERAGES, BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to "bodily injury" or "property damage" for demolition or wrecking of buildings or structures conducted by you unless coverage was purchased for "Wrecking – buildings or structures" and designated on the Declarations: * * *
* * *

(*See* Ex. B) (hereinafter referred to as the "Demolition Exclusion").

130.    The *Ransburg* SAC alleges that JLL and Lewis failed to build the Property in a good and workmanlike manner because the Property contains numerous design and construction defects.

34

131. The *Ransburg* SAC states that "the only work that Lewis/JLL did do clearly and completely was the demolition work and the installation of cement flooring in the basement." (*Id*., ¶119).

132. The *Ransburg* SAC further alleges that Lewis and JLL created openings on the second and third floors during demolition and never repaired them, resulting in pigeons building nests at the Property. (*Id*., ¶113).

133. The *Ransburg* SAC seeks damages from JLL and Lewis to repair and/or replace their allegedly defective work.

134. Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Demolition Exclusion bars coverage under the Policy for any damages relating to demolition or wrecking of buildings or structures conducted by JLL or Lewis as alleged in the *Ransburg* SAC.

135. Nautilus has and had no duty under the Policies to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

136. An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b. Find and declare that the Demolition Exclusion bars coverage under the Policy for any damages relating to demolition or

131188255v1 0978108

wrecking of buildings or structures conducted by JLL or Lewis as alleged in the *Ransburg* SAC;

c.    Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT XII

### THE "PROFESSIONAL SERVICES" EXCLUSION BARS COVERAGE

137.    Nautilus adopts and realleges the allegations in paragraphs 1 through 51 of its Complaint for Declaratory Judgment as paragraph 137 of Count XII of its Complaint for Declaratory Judgment as if fully set forth herein.

138.    The Nautilus Policy contains the following exclusion:

**EXCLUSION – PROFESSIONAL SERVICES – CONTRACTORS, ENGINEERS, ARCHITECTS, SURVEYORS AND CONSTRUCTION MANAGEMENT**
\* \* \*

The following exclusion is **added** to Paragraph **2. Exclusions** under **SECTION I – COVERAGES:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of the rendering of or failure to render any professional services by you or on your behalf. Professional services include:
\* \* \*

**(4)**    Supervisory, inspection, quality control, architectural or engineering activities.
\* \* \*

(*See* Ex. B) (hereinafter referred to as the "Professional Services Exclusion").

139.    The *Ransburg* SAC alleges that JLL and Lewis served as the general contractor for the renovation project at the Property.

36

140.    According to the Declarations of the Nautilus Policy, JLL performed supervisory activities at the Property.

141.    Even if the *Ransburg* SAC alleged "bodily injury" or "property damage" caused by an "occurrence" during the Nautilus Policy period, which Nautilus expressly denies that it does, the Professional Services Exclusion bars coverage under the Policy for any damages resulting from JLL's and/or Lewis' rendering or failing to render any supervisory, inspection, quality control, architectural or engineering activities.

142.    Nautilus has and had no duty under the Policies to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify them for any judgment or settlement entered in the *Ransburg* Lawsuit.

143.    An actual controversy exists between Nautilus, JLL, Lewis, and the Ransburgs, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.    Find and declare that the Professional Services Exclusion bars coverage under the Policy for the claims asserted in the *Ransburg* SAC;

c.    Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend JLL and Lewis against the *Ransburg* SAC, or to indemnify JLL and Lewis for any judgment or settlement entered in the *Ransburg* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

131188255v1 0978108

NAUTILUS INSURANCE COMPANY


By:     /s/ *Abigail M. Higgins*
        One of its Attorneys


Mr. Dana A. Rice (#6283827)
Ms. Abigail M. Higgins (#6317790)
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Phone: (312) 704-3000
Fax: (312) 704-3001

131188255v1 0978108