**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JLL CONSTRUCTION SERVICES, INC., JERRY L. LEWIS, 231 W. SCOTT, LLC, DAVID E. RANSBURG, and MARK RANSBURG,<br><br>Defendants. | ) | Hon. Robert W. Gettleman<br><br>Case No. 15-cv-09297 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nautilus Insurance Company ("Nautilus") filed a twelve-count complaint against defendants JLL Construction Services, Inc. ("JLL"), Jerry L. Lewis ("Lewis"), 231 W. Scott, LLC, David E. Ransburg, and Mark Ransburg (collectively "the Ransburgs"), seeking a declaratory judgment that it has no duty to defend or indemnify JLL or Lewis in connection with a lawsuit filed by the Ransburgs in the Circuit Court of Cook County. Having failed to timely answer or appear, JLL and Lewis are in default, but the Ransburgs have assumed the burden of establishing that their lawsuit is covered by the policy. Nautilus has moved for summary judgement pursuant to Fed. R. Civ. P. 56 against 231 W. Scott, LLC and the Ransburgs on Count VI of its Second Amended Complaint ("SAC"), and for default judgement pursuant to Fed. R. Civ. P. 55(b)(2) and 56 against JLL and Lewis on Count VI of its SAC. For the reasons discussed below, Nautilus's motion for summary judgment and default judgment is granted.

## BACKGROUND[1]

### I. The Underlying Lawsuit

On June 13, 2011, the Ransburgs filed a lawsuit in the Circuit Court of Cook County, Illinois (‘Ransburg Lawsuit”), naming JLL and Lewis as defendants. An appearance was filed on behalf of JLL and Lewis in the Ransburg Lawsuit on October 11, 2011, by attorney Charles E. Pinkston. On March 24, 2015, the Ransburgs filed a Second Amended Complaint (“Ransburg SAC”) in the Ransburg Lawsuit against Lakeside Bank, JLL, Lewis, Crystal Caison, Mayer Jeffers Gillespie, and Greater Illinois Title Company. The Ransburgs SAC involved events that allegedly occurred between 2006 and 2009.

The Ransburg SAC alleges that the Ransburgs signed an agreement with JLL on June 5, 2006, to renovate a three-story walk-up building located at 231 W. Scott Street in Chicago (the “Property”). The Ransburg SAC alleges that the renovation of the Property was defective and incomplete, resulting in damages. The Ransburg SAC further alleges that JLL and Lewis commingled funds from other projects, using money from the Ransburgs’ project, and as a result “shorted” the project at the Property. In January of 2009, JLL and Lewis allegedly walked off the job, resulting in city fines, stolen materials, and an $8,000 gas bill.

On November 12, 2015, the trial court in the Ransburg Lawsuit entered a judgment on the jury verdict that was returned for the Ransburgs and against JLL for breach of contract. On December 4, 2015, the court found for the Ransburgs and against JLL on the Ransburgs’ Illinois Consumer Fraud Act claim. The court found that JLL and Greater Illinois Title Company are jointly liable to the Ransburgs. On March 31, 2016, the court entered damages in the amount of

[1] The following facts are undisputed and come from Nautilus’s and the Ransburgs’ Rule 56.1 statements.

$525,000 and granted the Ransburgs' petition for attorney's fees in the amount of $285,000 and costs in the amount of $1,457.32 against JLL.

## II. The Nautilus Policy and First Notice of Loss and the Ransburg Lawsuit

Nautilus issued a commercial general liability insurance policy to JLL for the period of May 8, 2006 to May 8, 2007 ("Policy"). The Policy contains the following notice requirements:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claims or "suit" and the date received; and
(2) notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

To date, neither JLL or Lewis has ever notified Nautilus of the Ransburg Lawsuit, or of a loss or an "occurrence" that may result in a claim. Nautilus's first notice of the underlying loss and the subsequent Ranburg Lawsuit was on September 2, 2015, when counsel for the Ransburgs tendered the Ransburgs' SAC to Nautilus. Thus, Nautilus's first notice of the Ransburg Lawsuit was over four years after JLL and Lewis had already appeared in the case through counsel, and one and a half months before the trial in the Ransburg Lawsuit was set. Further, Nautilus's first notice of the underlying loss was six years after JLL and Lewis allegedly performed their

defective work and walked off of the job at the Property. On October 19, 2015, after Nautilus had received notice from the Ransburgs' counsel regarding the Ransburg Lawsuit, Nautilus sent a letter to JLL disclaiming coverage to JLL.

## DISCUSSION

### I. Legal Standard

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987); Fisher v. Transco Services–Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

### II. Analysis[2]

Nautilus argues that it does not have a duty to defend or indemnify JLL and Lewis in the underlying lawsuit because, (a) JLL and Lewis breached the Policy's notice requirements, and (b) Nautilus's eventual notice from the Ransburgs was unreasonable as a matter of law. The construction of an insurance policy and any determination of the rights and obligations under it are questions of law for the court and are appropriate for disposition on summary judgment.

[2] In determining whether an insurer has a duty to defend or indemnify, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). In the instant case, the forum state is Illinois; under Illinois choice of law principles, insurance contracts are construed according to the law of the state with the "most significant contacts" with the policy. Id. Both parties agree that Illinois law applies, and the court proceeds under the same assumption.

Twenhafel v. State Auto Prop. & Cas. Ins. Co., 581 F.3d 625, 628 (7th Cir. 2009). Under Illinois law, the primary function in construing an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. Cent. Illinois Light Co. v. Home Ins. Co., 213 Ill. 2d 141, 153 (2004). "If the words of the policy are clear and unambiguous, they must be afforded their plain, ordinary and popular meaning." Connecticut Specialty Ins. Co. v. Loop Paper Recycling, Inc., 356 Ill. App. 3d 67, 73 (1st Dist. 2005). In construing an insurance policy, the court should refrain from creating ambiguities where none exist. Id.

Under Illinois law, notice provisions in insurance policies impose valid conditions precedent to insurance coverage. Country Mut. Ins. Co. v. Livorsi Marine, Inc., 222 Ill. 2d 303, 311 (2006). "A policy condition requiring notice 'as soon as practicable' is interpreted to mean 'within a reasonable time.'" Id. The insured's breach of the policy's notice requirement by failing to give notice within a reasonable time will defeat its right to recover under the policy. Id. at 312.

"Whether notice has been given within a reasonable time depends on the facts and circumstances of each case." Id. "[I]t does not matter who notifies the insurer, as long as reasonable notice is given." Livorsi, 222 Ill. 2d at 312. In determining whether notice was given within a reasonable time, courts consider "the language of the notice provision, the insured's sophistication in commerce and insurance matters, its awareness that a suit was pending and once aware, its diligence in ascertaining whether policy coverage is available." N. Ins. Co. of N.Y. v. City of Chicago, 325 Ill. App. 3d 1086, 1092 (1st Dist. 2001). Courts may also consider the presence or absence of prejudice to the insurer, but "once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover

under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer." Livorsi, 222 Ill. 2d at 317.

In addition to the above factors, "the most obvious factor to be considered in determining whether notice was reasonable is time itself." Farmers Auto. Ins. Ass'n v. Burton, 2012 IL App (4th) 110289, ¶ 16 (4th Dist. 2012). Where the facts are undisputed, the reasonableness of notice to an insurer is a question of law appropriate for disposition on summary judgment. Kerr v. Illinois Cent. R. Co., 283 Ill. App. 3d 574, 583 (1st Dist. 1996).

In the instant case, the Nautilus Policy contains a notice provision that plainly states that the insured must provide written notice of a claim or "suit" as soon as practicable. The Policy also provides that the insured must provide notice as soon as practicable of any "occurrence" or offense which may result in a claim. It is undisputed that neither JLL or Lewis has ever notified Nautilus of the Ransburg Lawsuit, or of a loss, "occurrence" or offense that may result in a claim. Thus, there is no questions that JLL and Lewis breached the notice provision of the Policy.

Nautilus's first received notice of the Ransburg Lawsuit when the Ransburgs' tendered their complaint on September 2, 2015, four years after the Ransburg Lawsuit was filed and six years after JLL and Lewis walked off the job at the Property. Such a delay in notice cannot be deemed "reasonable." Illinois courts have found much shorter delays in notice to be unreasonable: Burton, 2012 IL App (4th) at ¶ 16 (holding that insured failed to provide reasonable notice when he waited 11 months after his arrest to notify insurer that believed he had killed a pedestrian in hit and run accident); Montgomery Ward & Co. v. Home Ins. Co., 324 Ill. App. 3d 441, 449 (1st Dist. 2001) (holding that insured's eight-month or year-long delay in giving notice to insurer was unreasonable). Further, JLL and Lewis have failed to appear in the

instant case, and therefore they are unable to provide any explanation regarding the delay in notice. Consequently, there is no need to consider whether Nautilus was prejudiced by the delay in notice. Livorsi, 222 Ill. 2d at 317; Montgomery Ward, 324 Ill. App. 3d at 449 (holding that "[l]ack of prejudice to the insurer is a factor to be considered only where the insured has a good excuse for the late notice or where the delay was relatively brief").

The Ransburgs argue that there is an exception to "late" notice when an insurer receives notice from a source other than the insured. The Ransburgs cite Cincinnati Companies v. W. Am. Ins. Co., 183 Ill. 2d 317, 325 (1998), for the proposition that after an insurer receives actual notice of an underlying lawsuit, it has a duty to reach out to its insured to ascertain whether the insured would like coverage during the lawsuit, and the insurer is relieved of its duty to defend only if the insured indicates it does not want to the insurer's assistance or if the insured is unresponsive or uncooperative. According to the Ransburgs, Nautilus had a duty to reach out to JLL after it received notice of the Ransburg Lawsuit to inquire whether JLL wanted coverage, rather than immediately disclaiming coverage. This court disagrees.

In Cincinnati, the issue was "whether an insurer's duty to defend its insured arises upon receipt of actual notice of the suit against its insured, or whether the duty to defend is triggered only upon the insured's tender of its defense to the insurer." Cincinnati, 183 Ill. 2d at 318. The case involved a contractor listed as an "additional insured" on a policy issued by West American. The contractor failed to immediately tender its defense to West American because it was unaware that it was listed as an additional insured, but West American had actual notice of the underlying lawsuit shortly after service of process because it was the primary insurer of another contractor involved in the underlying lawsuit. On the eve of trial in the underlying lawsuit, the contractor's primary insurer, Cincinnati, tendered the contractor's defense to West American,

and West American immediately rejected the tender. The court held that "where the insured has not knowingly decided against an insurer's involvement, the insurer's duty to defend is triggered by actual notice of the underlying suit." Id. at 329.

The court's holding in Cincinnati does not provide an exception to reasonable notice. Rather, Cincinnati merely stands for the proposition that reasonable notice may include actual notice of an underlying lawsuit, rather than the insured tendering its defense directly to the insurer. In the instant case, the Ransburgs' argument fails because not only did JLL never tender its defense to Nautilus, but Nautilus did not receive actual notice of the underlying lawsuit until four years after the suit was filed. As discussed above, such notice was not reasonable, as required by the Policy. Consequently, Nautilus's motion for summary judgment and default judgment is granted.

## CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and default judgment, and holds that plaintiff Nautilus Insurance Company has no duty to defend or indemnify defendants JLL Construction Services, Inc. or Jerry L. Lewis.

**ENTER: June 1, 2017**

**Robert W. Gettleman**
**United States District Judge**